Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

for the

JAN 1 8 2023

EASTERN    District of ARKANSAS

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

DELTA    Division

|  |  |
|---|---|
| ERIC LYDELL CAFFEY | ) |
| *Plaintiff(s)* | ) |

Case No.   2:23-cv-00010-BSM-PSH

*(to be filled in by the Clerk's Office)*

ERIC LYDELL CAFFEY
_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

**This case assigned to District Judge** Miller
**and to Magistrate Judge** Harris

MERRICK GARLAND, ET AL.
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names. Do not include addresses here.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | ERIC LYDELL CAFFEY |
| All other names by which you have been known: | |
| ID Number | 21508-009 |
| Current Institution | FEDERAL CORRECTIONAL INSTITUTION FORREST CITY |
| Address | 1400 DALE BUMPERS RD. P.O. BOX 3000 |
| | FORREST CITY,              ARKANSAS        72336 |
| | *City*                          *State*              *Zip Code* |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | MERRICK GARLAND  / UNITED STATES OF AMERICA |
| Job or Title *(if known)* | ATTORNEY GENERAL, REPRESENTATIVE OF UNITED STATES OF AMERICA |
| Shield Number | |
| Employer | UNITED STATES DEPARTMENT OF JUSTICE |
| Address | 950 PENNSYLVANIA AVENUE N.W. |
| | WASHINGTON,              D.C.              20530 |
| | *City*                          *State*              *Zip Code* |

☐ Individual capacity    ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | DEWAYNE HENDRIX |
| Job or Title *(if known)* | WARDEN (FORMER) |
| Shield Number | |
| Employer | FCC FORREST CITY FEDERAL CORRECTIONAL INSTITUTION |
| Address | 1400 DALE BUMPERS RD. |
| | FORREST CITY,              ARKANSAS              72336 |
| | *City*                          *State*                  *Zip Code* |

☒ Individual capacity    ☐ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**Defendant No. 3**

| | |
|---|---|
| Name | M.D. CARVAJAL |
| Job or Title *(if known)* | DIRECTOR OF FEDERAL BUREAU OF PRISONS |
| Shield Number | |
| Employer | FEDERAL BUREAU OF PRISONS |
| Address | 320 FIRST STREET N.W. |

WASHINGTON                    D.C.        20534
*City*                              *State*              *Zip Code*

[XX] Individual capacity    [ ] Official capacity

**Defendant No. 4**

| | |
|---|---|
| Name | LIEUTENANT MARRS |
| Job or Title *(if known)* | OPERATIONS LIEUTENANT |
| Shield Number | |
| Employer | FCC FORREST CITY CORRECTIONAL COMPLEX |
| Address | 1400 DALE BUMPERS RD. |

FORREST CITY,                ARKANSAS    72336
*City*                              *State*              *Zip Code*

[XX] Individual capacity    [ ] Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

[XX] Federal officials (a *Bivens* claim)

[ ] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

_____

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

VIOLATION OF EIGHTH AMENDMENT CONSTITUTIONAL RIGHTS

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐    Pretrial detainee

☐    Civilly committed detainee

☐    Immigration detainee

☒    Convicted and sentenced state prisoner

☐    Convicted and sentenced federal prisoner

☐    Other *(explain)*  _____

## IV.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.
THE EVENTS OF MY CLAIM TOOK PLACE AT FEDERAL CORRECTIONAL INSTITUTION FORREST CITY-MEDIUM FROM APRIL 1ST 2020, TO OCTOBER 2020.

C.      What date and approximate time did the events giving rise to your claim(s) occur?

THE EVENTS OF MY CLAIM TOOK PLACE FROM APRIL 1ST TO JANUARY 2021...

D.      What are the facts underlying your claim(s)? *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

SEE ATTCHED DOCUMENTS...

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

SEE ATTCHED DOCUMENTS...

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

PLAINTIFF IS SEEKING COMPENSATORY AND PUNITIVE DAMAGES...

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VII.    Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

FEDERAL CORRECTIONAL INSTITUTION FORREST CITY-MEDIUM

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

ALL CLAIMED ISSUES ARE COVERED UNDER GRIEVANCE PROCEDURE OF THE FEDERAL BUREAU OF PRISONS...

CAFFEY, ERIC 21508009

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

FEDERAL CORRECTIONAL INSTITUTION FORREST CITY-MEDIUM

2.    What did you claim in your grievance?

ALL CLAIMS LISTED IN COMPLAINT WERE FILED IN GRIEVANCE...

3.    What was the result, if any?

ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED AND DENIED ON ALL LEVELS...

4.    What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not.  *(Describe all efforts to appeal to the highest level of the grievance process.)*

ADMINISTRATIVE REMEDIES WERE FILED... GRIEVANCE PROCESS IS COMPLETED AND EXHAUSTED...

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.    If you did not file a grievance:

1.    If there are any reasons why you did not file a grievance, state them here:

___NOT APPLICABLE..._____

2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

___NOT APPLICABLE..._____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

___SEE ATTACHED DOCUMENTS... (EXHAUSTION OF ADMINISTRATIVE REMEDIES)_____

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

NOT APPLICABLE...

CAFFEY ERIC 21503009

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s) NOT APPLICABLE

Defendant(s) NOT APPLICABLE

2.    Court *(if federal court, name the district; if state court, name the county and State)*

NOT APPLICABLE

3.    Docket or index number

NOT APPLICABLE

4.    Name of Judge assigned to your case

NOT APPLICABLE

5.    Approximate date of filing lawsuit

NOT APPLICABLE

6.    Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.    NOT APPLICABLE

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

NOT APPLICABLE

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?    NO

CAFFEY, ERIC 21508009

Page 9 of 11

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

☐ Yes

☒ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

   Plaintiff(s)     NOT APPLICABLE
   Defendant(s)    NOT APPLICABLE

2.    Court *(if federal court, name the district; if state court, name the county and State)*

   NOT APPLICABLE

3.    Docket or index number

   NOT APPLICABLE

4.    Name of Judge assigned to your case

   NOT APPLICABLE

5.    Approximate date of filing lawsuit

   NOT APPLICABLE

6.    Is the case still pending?

   ☐ Yes

   ☐ No

   If no, give the approximate date of disposition     NOT APPLICABLE

7.    What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

   NOT APPLICABLE

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:

Signature of Plaintiff        ERIC LYDELL CAFFEY    ERIC CAFFEY

Printed Name of Plaintiff    ERIC LYDELL CAFFEY

Prison Identification #      21508-009

Prison Address              FCI FORREST CITY-MEDIUM 1400 DALE BUMPERS RD. P.O. BOX 3000

FORREST CITY ,                                ARKANSAS        72336
                    City                        State          Zip Code

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

                            City                    State        Zip Code

Telephone Number

E-mail Address

Plaintiff Eric Caffey, representing himself pro se, alleging as follows:

This action is being brought before this Court for violation of Plaintiff's Constitutional Rights, under the Eighth Amendment of the United States Constitution, while in the custody of the Federal Bureau of Prisons and under the direct care of the Federal Correctional Institution Forrest City-Medium. Plaintiff seeks compensatory and punitive damages in an amount to be determined and proven at trial.

Parties:

1. Plaintiff Eric Caffey, (hereinafter "Plaintiff") is and at all times relevant to this litigation; is an incarcerated inmate, currently being housed at the Federal Correctional Institution Forrest City Medium, located in Forrest City, Arkansas.

2. Defendant Merrick Garland is, and at all times relevant to this litigation, is the Attorney General of the United States of America, and head of the Department of Justice to the United States of America, which maintains oversight of the Federal Bureau of Prisons.

3. Defendant DeWayne Hendrix is, and at all times relevant to this litigation, was the Warden of the Federal Correctional Institution Forrest City, located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions performed in his official capacity; that is, in his inability to ensure that the proper procedures were in place, that would allow Plaintiff to receive proper and effective medical treatment in a timely manner, and in accordance with the standard of care as provided pursuant to Arkansas law, and in accordance with Plaintiff's Constitutional rights pursuant to the United States Constitution. Defendant Hendrix was the Warden of Forrest City during the time period relevant to this litigation.

4. Defendant M.D. Carvajal, is and at all times relevant to this litigation, was the Director of the Federal Bureau of Prisons, under the guidance of the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity; that is in not providing the proper procedures for ensuring that Plaintiff's health, safety, and well-being were not being put at risk, subjecting him to a substantial risk of harm; and/or allowing Plaintiff to be incarcerated under conditions of confinement which violated his constitutional rights while imprisoned in the Federal Bureau of Prisons.

By virtue of his position, Carvajal is responsible for the actions and inaction of the employees of the Federal Bureau of Prisons, during the time period that he was head of administration .

(1)

5. Defendant Lieutenant Marrs, is and at all times relevant to this litigation, was operations lieutenant as part of the prison administration at FCI Forrest City Medium, located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions performed in his official capacity; in that, he personally subjected Plaintiff to Cruel & Unusual Punishment, during and in relation to his handling of the Covid-19 pandemic at the facility.

Jurisdiction & Venue:

6. This action arises under the Constitution and laws of the United States of America, including "Bivens vs. Six Unknown Named Federal Narcotics Agents, 403 U.S. 388 (1971) and the Federal Tort Claim Act (FTCA) 28 USC § 2671-2680. Jurisdiction is conferred upon this court pursuant to 28 USC § 1331 and 1346(b) respectively.  Venue in this court is proper under 28 USC § 1391 and 1402(b), respectively.

Factual Statement:

7. Beginning April 1, 2020... The Forrest City Medium Facility began an institutional lockdown, as a result of a BOP wide mandate. Plaintiff was initially locked in his cell for 23.5 hours per day, 7 days per week. Plaintiff and other inmates were told that this was due to "CDC Guidelines and a nationwide lockdown being implemented by the United States Government."

8. As a result of being locked in a cell, Plaintiff was denied his right to adequate medical care, exercise, sunlight, and other "basic life necessities" which are covered under the Eighth Amendment of the United States Constitution.

9. Throughout May & June of 2020, Plaintiff remained locked in his cell for 21-23.5 hours per day, 7 days per week where he was continually denied and deprived of exercise, fresh air, and adequate medical care.

10. Despite being on lockdown for up to 24 hours per day, 7 days per week, inmates began to test positive in high numbers in July of 2020. From there, the spread of the virus became uncontrollable and there were a high number of infected inmates being reported from 9 out of the 10 open units.

11. From July 1, 2020 to September 11, 2020, there were over 300 inmates who tested positive here at FCI Forrest City Medium. (This number was not being accurately reported to or by the Federal Bureau of Prisons.)

While other FBOP facilities were getting back to normal functioning, FCI Forrest City Medium & Low, were still experiencing the full brunt of the pandemic. This was largely due to lack of strict adherence to CDC guidelines as well as implementation of ineffective protocols and procedures.

12. Staff members were not wearing masks as recommended per CDC guielines and inmate mask wearing was not being strictly enforced (IF) enforced at all.

(2)

13. Inmates who tested positive were being assigned to positions where they were being allowed to pass out meals to other inmates.

14. Social distancing guidelines were not enforced <u>at all</u>; as it is impossible to enforce in living areas.

15. On Friday September 4, 2020, there was such an influx in the number of positive cases, the outbreak prompted a complete lockdown of the facility, ceasing all movement. This outbreak also included essential inmate workers such as kicthen, laundry, and commissary.

16. From August 1st to October 13, 2020 Plaintiff was locked in C-4 housing unit for 74 consecutive days without receiving sunlight, fresh-air, or exercise.

17. From October 13, 2020, to November 27, 2020, the facility was on modified movement until inmates began to test positive again on November 27th.

18. December 4, 2020, The facility was placed on a complete lockdown again as a result of a high number of inmates testing positive in multiple units.

( 3 )

19. On or about December 11, 2020, my cellmate Marvin Layton, Register # 30858-009, tested positive for Covid-19, along with several other inmates in the C-4 housing unit.  Inmates who tested positive, were taken from C-4 and housed in A-4, which had been designated as the quarantine unit for inmates who were testing positive.

CDC Guidelines directed that anyone who tested positive or had been exposed to someone else who tested positive would need to quarantined for a period of not less than 14 days and closely monitored during this time period.

20. December 13, 2020, I began to feel extremely sick. I pressed the medical emergency button several times because I was in need of medical attention; the unit officer came to turn off the alarm, but ignored my request to see someone from medical. I continued to yell for the officer informing him that I needed to see someone from medical.

21. Lieutenant Marrs came to my cell to find out what my problem was. He accused me of being "high on K-2"... He snatched me out of my cell; handcuffed me, and went in and tore my room apart leaving my belongings all over the my cell. He also ignored my request for medical attention and told me that he would send me to the SHU if I pushed the button again. I told him that I was sick and my cellmate tested positive for Covid.  Lt. Marrs left and I did not receive any medical attention.

22. After my cellmate tested positive and was moved to the quarantine unit, I requested a Covid test from the medical staff  to determine whether or not I was positive or not. I requested a Covid test every day when the medical staff members came around to take our temperatures and ask if we were experiencing symptoms.

23. On December 19, 2021, I received a Covid test  8 days after my cellmate had tested positive and been taken to quarantine.  Throughout this time period, I continued to inform the medical staff that I felt sick and I was experiencing symptoms of Covid. Medical staff ignored me for 8 days.

24. December 20, 2020, my results were returned and I was informed that I was positive for Covid-19 and needed to pack my belongings to move to the A-4 housing unit.

25. December 14, 2020, I continued to inform medical staff that I was sick and in need of medical attention.  I was told by medical staff that I was "having an anxiety attack and needed time to calm down."

My brother Dan Caffey was moved into the cell with me in an effort to "calm me down and keep me from acting stupid and pressing the emergency button."

26. December 20, 2020, My brother Dan Caffey, also tested positive and was told that he would be moving to the quarantine unit.

(4)

27. While in the quarantine unit, I continued to request medical attention for a remedy for   the Covid symptoms that I was experiencing. The nurse continued to try to convince me that I was "asymptomatic" and that what I was experiencing was being caused by my anxiety.

28. Throughout 2021, I continued to experience the after effects of Covid-19. I reported to medical on numerous occasions and informed the medical staff members of all the symptoms that I was experiencing.

29. Without a doubt, Forrest City Medium reported falsified numbers regarding the actual amount of inmates who tested positive for Covid-19. Forrest City Medium had only reported that 103 inmates had tested positive and recovered from the virus as of November 12, 2020. This was reported on the BOP.GOV website.

This was clearly false; as there were at least 50 inmates in one unit alone (C-3) that tested positive from August 1st to September 30th; not even counting the other 9 units that were experiencing a high number of inmates testing positive during the same time period.  This false claim can easily be dispelled by verifying the actual number of inmates who were reported as testing positive and sent to the quarantine unit during the time period previously referrenced.

30. The conditions of confinement which existed here at FCI Forrest City; where Plaintiff was denied and deprived of "basic life necessities", subjected Plaintiff to Cruel & Unusual Punishment in violation of his 8th Amendment Constitutional rights.

31. Plaintiff was also denied his right to safety by subjecting him to conditions of confinement which were the direct causation of his contraction of Covid-19; and numerous ongoing violations of his Eighth Amendment Constitutional rights.

All constitutional violations are the direct result of prison administrators' inability to implement a feasible mitigation plan to curb, stop, or even slow down the spread of the virus during the time that it was ripping through the Forrest City Medium facility.

32. Not even locking Plaintiff in a cell for up to 24 hours per day, 7 days per week, for a period of more than 8 months, worked to stop Plaintiff from contracting the virus. Therefore, Forrest City Federal Correctional Institution and the FBOP failed to protect Plaintiff from harm and violated Plaintiff's rights frivolously, and proved their inability to guarantee Plaintiff's safety in accordance with the rights that are afforded to him under the laws and treaties of the United States Constitution.

33. Plaintiff asserts that he has exhausted the administrative remedy process within the Bureau of Prisons, in an attempt to remedy his complaint as required by 28 U.S.C § 2675. Plaintiff has also filed the required TORT claim with the required agency: Federal Bureau of Prisons-Regional Director; Grand Prairie Office Complex; 344 Marine Forces Dr. Grand Prairie, TX 75051.

(5)

Bivens Actions
Count 1- Deliberate Indifference

34. Here Plaintiff is alleging that defendant DeWayne Hendrix, acted with Deliberate Indifference to his health, safety, and overall wellbeing, and subjected him to unconstitutional conditions of confinement, while also failing to protect him from the harm of contracting a potentially deadly virus.

35. As Warden and head of administration at FCI Forrest City, Hendrix had an obligation to implement procedures, whereby Plaintiff would be protected from the threat of contracting Covid-19, while also ensuring that the staff and the facility overall were operating in compliance with the guidelines set forth by the CDC. Hendrix was also responsible for ensuring that Plaintiff's rights were not being violated as a result of the policies and procedures that were put in place in an effort to combat the spread of Covid-19.

36. At the beginning of 2020 when the coronavirus began to spread rapidly and it was well known that contraction of Covid-19 could result in death for some individuals, the Bureau of Prisons was effectively put on notice of the potential danger of the virus. The Bureau of Prisons implemented policies and procedures which were to be followed by all of it's facilites.

One of the practicies that was emphatically expressed to assist in protecting against the spread of Covid-19 was the wearing of face mask. CDC specifically stated that the mask should be "medical grade" or "surgical".

37. Inmates were provided with very low-grade cloth masks, which we were required to wear at all times when outside of our cells and outside of the housing unit.

38. Even though inmates were being required to wear masks at all times when outside of their cell and housing units, there were no rules in place where STAFF were required to wear masks... (IF there were rules in place which specifically stated that staff were required to wear a mask, the rule was not being enforced at all.)

39. Staff members were more likely to contract Covid-19 from interactions in the outside world and bring the virus into the institutional environment where it would then be introduced to inmates and spread throughout the facility, threatening the health, safety, and wellbeing of the inmates.

40. As part of the safety measures of protecting against the spread of Covid-19, CDC stated that "everyone should wear a mask to protect against contracting and/or spreading the virus." The BOP required that all inmates wear a mask when outside of their cells and housing units... President Biden issued a mandate stating that "all federal employees were required to wear masks inside federal buildings."

Warden Hendrix was directly informed of and/or aware of the CDC guidelines, as well as the federal mandate requiring staff to wear masks in federal facilities. Hendrix ignored this mandate and allowed staff to come to work and interact with inmates without wearing masks.

(6)

41. Hendrix was directly informed of the contagiousness of the coronavirus and how easily it was spreading from one individual to another. The CDC clearly informed the entire world of this and it was well known within the BOP. Hendrix was aware that the virus was deadly and that contraction of the virus had the potential to cause serious, life-threatening health complications and/or death.

Though Hendrix was aware that the virus spread easily, and was labeled as "airborne", and that there was a higher probability that staff could contract the virus and introduce it to the institution, he failed to take action to implement policies or procedures MANDATING staff to wear face masks.

42. Hendrix knew of and disregarded the risk to Plaintiff's health, safety, and wellbeing, which resulted in Plaintiff contracting Covid-19 here at Forrest City. Hendrix's actions were one of the many factors which directly contributed to Plaintiff testing positive for Covid-19 and his subsequent suffering as a result of that.

43. Hendrix implemented and/or carried out policies that allowed inmates to be locked in their cells for up to 24 hours per day, 7 days per week. From April 1st 2020, until October 13th 2020... Inmates were locked in their cells and only allowed to come out for between 30 minutes to 3 hours per day. Inmates were told that this was due to CDC guidelines and procedures that were being implemented by the Federal Bureau of Prisons. Inmates were being locked in the housing units 24 hours per day even though CDC stated that being outside in the open air was effective for mitigating the spread of the virus and allowing for better social distancing practices to be implemented.

During this time period, Plaintiff was denied/deprived his right to exercise, which is covered under the Eighth Amendment as a "basic life necessity". Inmates are strictly forbidden from exercising indoors and are subjected to disciplinary infractions for doing so. Denial of exercise subjected Plaintiff to Cruel & Unusual Punishment in violation of the Eighth Amendment of the United States Constitution.

44. Hendrix was aware that the policies and/or procedures that were put in place in an effort to mitigate the spread of the virus were essentially direct violations of Plaintiff's constitutional rights. As Warden at FCI Forrest City and head of administration, Hendrix was informed of every policy that was being used within the Bureau of Prisons and more specifically his facility. Awareness of the policies, practices, or procedures which effectively kept inmates locked in their cells for up to 24 hours per day, 7 days per week, denied/deprived Plaintiff of exercise, and subjected Plaintiff to Cruel & Unusual Punishment; and failure to take action against the implementation of these policies, practices, or procedures was an act of deliberate indifference to the health, safety, and overall wellbeing of Plaintiff.

45. By virtue of his position, Hendrix was responsible for every action or inaction that took place while he was head of administration. He was specifically aware of the practices that were being implemented during the pandemic to mitigate the spread of Covid-19.

(7)

Hendrix took no corrective action to stop the practices which continually subjected Plaintiff to Cruel and Unusual Punishment and ultimately resulted in Plaintiff contracting Covid-19.  He was aware that Plaintiff faced a substantial risk of serious harm and continued to allow unconstitutional practices and procedures to be carried out.

46. Hendrix chose to disregard the imminent risks that Plaintiff was being subjected to; therefore he was deliberately indifferent to Plaintiff's health, safety and wellbeing in violation of his rights.

47. Hendrix acted with a sufficiently culpable state of mind, as he was responsible for and aware of what was taking place within his facility, and failed to take the necessary steps to abate or resolve the matter.

48. Here Plaintiff is alleging that defendant M.D. Carvajal, acted with Deliberate Indifference to his health, safety and overall wellbeing, and implemented BOP wide practices, policies, and procedures which subjected Plaintiff to Cruel & Unusual Punishment, an imminent risk of harm/danger, and various other constitutional violations.

49. As Director of the Federal Bureau of Prisons, Carvajal was directly responsible for     creating and administering the policies, practices, and procedures that would be implemented in it's facilities in accordance with the standards and guidelines set forth by the CDC, in an effort to mitigate the spread of Covid-19 within the Bureau of Prisons and it's facilities.

50. Upon being informed of the threat of the coronavirus, the Bureau of Prisons began to implement policies, procedures, and protocols that would be put in place in an effort to limit the introduction of coronavirus into it's prisons and mitigate it's potential to spread upon introduction.

51. Director Carvajal was directly responsible for and/or involved in the process of creating the policies that would be implemented. One of the policies was facility lockdowns and restricted movement of all inmates in it's facilities. As a result of the facility lockdowns which began on April 1, 2020, Plaintiff was required to be locked in his cell for 23.5 hours per day, 7 days per week. For a period of time, Plaintiff was locked in his cell for 24 hours per day, 7 days per week. During this time Plaintiff was subjected to cruel and unusual punishment, as he was being denied his right to adequate medical care and exercise, which are covered under the Eighth Amendment as "basic life necessities".

52. Despite the fact that these policies lead to violations of Plaintiff's constitutional rights, these policies remained in place from April 1st until October 13, 2020.

53. Defendant Carvajal was aware that some of the policies that would be implemented to stop the introduction & spread of the coronavirus would re-

(8)

sult in constitutional violations; however the policies and procedures were implemented anyways. Further into the pandemic, when facilities such as FCI Forrest City began to report high numbers of inmates testing positive with Covid-19, it was being proven that the policies, protocols, and procedures that were put in place, were proving to be ineffective against the introduction and spread of Covid-19, therefore, failing to protect Plaintiff against the danger of contracting the virus. Once it was proven that these policies and procedures were ineffective, Carvajal failed to take action to implement an effective mitigation plan.

54. Carvajal's actions or inaction was deliberately indifferent towards the health, safety, and overall well-being of Plaintiff, and were the direct causation of the circumstances which resulted in Plaintiff contracting Covid-19.

55. One of the practices that was emphatically expressed by the Center for Disease Control (CDC) to assist in protecting against the spread of Covid- 19, was the wearing of face masks. CDC specifically outlined the benefits of wearing a mask vs. not weraing them , in order to aide in the protection against contracting and spreading coronavirus. The CDC also stated that masks should be "surgical grade" and that cloth and other materials  were deemed ineffective.

56. Inmates were provided with low-grade cloth masks, which were MANDATORY to be worn at all times when outside of cells and housing units. Inmates were denied access to meals, medical, law-library, etc, if they were not wearing a mask.

57. Even though inmates were being required to wear masks at all times, there were no policies in place where staff members were being required or MANDATED TO WEAR MASKS. IF there were a policy in place, which specifically stated that staff were required to wear a mask, the policy was not being enforced at all.

58. Carvajal was directly informed that wearing of masks was being touted as the best form of protection against the contraction and spreading of Covid-19. President Biden issued a MANDATE stating that "all federal employees were required to wear masks inside federal buildings."

Carvajal failed to implement enforcement policies ensuring that FBOP employees would comply with the mandatory mask mandate. Therefore, Federal Bureau of Prisons employees were knowingly allowed to enter and exit BOP facilities, deliberately defying the mask mandate, with no consequences or reprecussions for doing so.

59. Since staff members interacted with the general population outside of the prison environment, it was more likely that they would contract Covid-19 from those interactions and then bring the virus into the institutional environment, where it would then be introduced to inmates, spread throughout the facility, threatening the health, safety, and overall well-being of Plaintiff and other inmates. When the pandemic initially started and the BOP begin to implement facility lockdown, there were no transfers of inamets to/from other facilities, in order to ensure that Covid-19 would not be brought in by inmates, or spread between facilities through inmate transfers. Therefore, introduction of coronavirus into BOP facilities was initiated by STAFF.

(9)

60. Carvajal became aware that the coronavirus was spreading rampantly throughout it's facilities and took no corrective action to change or implement more effective procedures that would prove to be more effective in mitigating the spread of Covid-19.  Staff members continued to navigate BOP facilities, blatantly ingnoring the federal mandate for wearing mask.

61. Carvajals actions contributed to the direct causation of Plaintiff contracting Covid-19 at FCI Forrest City, as a result of implementation of ineffective protocols and procedures, and his failure to take action against facilities that failed to adhere to the policies that were put in place to mitigate the spread of the virus.  Carvajals actions were deliberately indifferent to the health, safety, and overall well-being of Plaintiff because he failed to implement strict guidelines that would protect Plaintiff from the imminent risk of harm that he was being subjected to at FCI Forrest City Medium.

62. Carvajal acted with a sufficiently culpable state of mind, as he was responsible for and aware of what was taking place (that the procedures implemented were proving ineffective) and failed to take necessary steps to abate or resolve the situation. He consciously chose to disregard the substantial risk of harm to the inmates' health, safety, and well-being, resulting in Plaintiff and tens of thousands of other inmates contracting a potentially deadly virus while incarcerated in BOP facilities.


**Bivens Action:**
Count 2- Cruel & Unusual Punishment


63. Here Plaintiff is alleging that defendant DeWayne Hendrix subjected him to cruel & unusual punishment, by implementing policies, procedures, and restrictions which denied and deprived him of the "minimal civilized measure of basic life necessities", while also subjecting Plaintiff to unconstitutional conditions of confinement, which directly violated his Eighth Amendment Constitutional rights.

64. Hendrix directly contributed to the denial and deprivation of "basic life necessities", specifically  adequate medical care, exercise, and harsh conditions of confinement which subjected Plaintiff to the unreasonable risk of harm which resulted in the unnecessary and wanton infliction of pain and suffering as a result of contracting Covid-19.

65. As Warden and head of administration at FCI Forrest City-Medium, Hendrix had an obligation to implement procedures, whereby, Plaintiff would be protected from the threat of contracting Covid-19, while also ensuring that staff and the facility overall were operating in compliance with the guidelines set forth by the CDC as well as policy changes being implemented by the BOP in an effort to mitigate the introduction and spreading of the coronavirus.

Hendrix was also responsible for ensuring that Plaintiff's right's were not being violated as a result of those policies and procedures that were being put in place.

(10)

66. At the beginning of 2020, when the coronavirus began to spread rampantly and it was announced nationwide that "contraction of Covid-19 could result in death for some individuals whom were considered high risk", the BOP, which included FCI Forrest City, was effectively put on notice of the potential danger/threat of the virus, The BOP and all it's facilities began to implement policies and procedures that would be put in place in an effort to stop the introduction of, and or mitigate the spread of the virus once it entered into the facilities.

67. At FCI Forrest City specifically, Hendrix implemented and carried out policies that madatorily required inmates to be locked in their cells for up to 24 hours per day, 7 days per week. The facility lockdown began on April 1st 2020, and extended until October 13, 2020.

Inmates were locked in their cells, inside the housing units and were only permitted to be out of their cells for between 30 minutes to 3 hours per day for showers and phone/email communication. Inmates were told that this was due to "CDC guidelines" and BOP policies that were being implemented to "protect inmates from contracting Covid-19."

68. Inmates were being locked inside the housing units for 24 hours per day, even though the CDC announced that "being outside was effective for mitigating the spread of the virus because it allowed for better social-distancing practices to be implemented."

69. During this time period, Plaintiff was denied/deprived of his right to exercise, which is covered under the Eighth Amendment as a "basic life necessity." Inmates were not allowed to go outside of the unit for any duration of recreation time which could be utilized for exercise. Inmates were strictly prohibitted from exercising indoors and were subjected to or threatened with disciplinary infractions for doing so.

70. Denial of exercise subjected Plaintiff to cruel & unusual punishment because it was also accompanied with extensive periods of being locked in a cell and locked inside of the housing unit.

71. Hendrix was aware that Plaintiff was being locked in a cell for an extensive period of time and that he was not being allowed to go outside for any form of recreation and/or exercise. Awareness of the policies, practices, and procedures that were requiring Plaintiff to be locked in his cell for up to 24 hours per day, 7 days per week, essentially meant that Hendrix was ok with subjecting Plaintiff to cruel and unusual punishment in violation of his constitutional rights.

72. By virtue of his position, Hendrix was responsible for every action or inaction that took place at the Forrest City facility. He took no corrective action to stop the practices; and therefore, contributed to the cruel and unusual punsihment that Plaintiff was being subjected to.

73. Hendrix chose to disregard the risks to Plaintiff's health that he would be subjected to as a result of being locked in a cell for long periods of time while also being denied/deprived of access to exercise.

(11)

74. Hendrix acted with a sufficiently culpable state of mind, as he was well informed and/or responsible for the policies, practices, and procedures that were being implemented within his facility, and failed to take the necessary steps to abate or resolve the matter.

75. Here Plaintiff is alleging that defendant M.D. Carvajal created and/or contributed to the circumstances which allowed/caused him to be subjected to cruel and unusual punishment, by denying him the "minimal civilized measure of basic life necessities."

76. As Director of the Federal Bureau of Prisons, Carvajal was directly responsible for creating and administering the policies, practices, and procedures that would be implemented in it's facilities, in accordance with the standards and guidelines set forth by CDC, in an effort to mitigate the spread of Covid-19 within the Bureau of Prisons and it's facilities.

77. Upon being informed of the threat of the coronavirus, the BUreau of Prisons began to implement polices, procedures, and protocols that would be put in place in the Bureau of Prisons facilities.

78. Carvajal was directly responsible for, and/or involved with the process of creating the policies that would be implemented. One of the policies that was implemented was lockdowns and restricted movements of all inmates in it's facilities. As a result of the facility lockdowns, which began on April 1, 2020, Plaintiff was required to be locked in his cell for up to 24 hours per day, 7 days per week. During this time period, Plaintiff was subjected to cruel & unusual punishment, as he was being denied his right to exercise, adequate medical care, and conditions of confinement which subjected him to a substantial risk of harm.

79. As a result of being locked in a cell for up to 24 hours per day, from April 1st to October 13, 2020, Plaintiff began to experience various complications with his health as a result of being confined to a cell for up to 24 hours per day. Plaintiff began to suffer from depression, anxiety, fatigue, joint pain, muscle aches, etc, as a result of being denied/deprived of access to exercise and fresh air, which was compounded by extensive periods of being locked in his cell and inside the housing unit.

80. Despite the fact that CDC continued to announce that  being outdoors was effective for mitigating the spread of Covid-19 because it allowed for better social distancing practices to be implemented, Carvajal and the Bureau of Prisons implemented policies whereby inmates were instead confined to their 8x12 cells, and then confined inside of the housing unit where inmates congregated amongst  each other and social distancing was impossible.

Plaintiff was not allowed to go outside of the housing unit for any duration of time for recreation which is where inmates are required to get their exercise. Inmates are strictly prohibited from exercising indoors and are subjected to disciplinary infractions for doing so; therefore, Plaintiff was completely denied of his right to exercise. Plaintiff is a diabetic and has hypertension, so maintaining a consistent regimen is critial for his health.

(12)

81. Plaintiff's health suffered as a result of his inability to exercise, subjecting him to unnecessary and wanton pain and suffering as a result of this.

82. Carvajal was aware that the policies being implemented required Plaintiff to be locked in his cell and in the housing unit for extensive periods of time and that they were being denied access to exercise in violation of his and other inmate's constitutional rights. Even though he was aware that Plaintiff's rights were and would continue to be violated by the policies that were being implemented, he allowed those polices, practices, and procedures to be carried out anyways, and therefore, contributed to the cruel and unusual punishment that Plaintiff was subjected to.

83. By virtue of his position, Carvajal was responsible for every action and inaction that takes place within the Federal Bureau of Prisons, and it's facilities. Despite his responsibility to ensure that Plaintiff was not being subjected to circumstances which subjected him to unnecessary harm, and/or violations of his constitutional rights; Carvajal disregarded the risks to Plaintiff's health and safety and blatantly ignored the violations of Plaintiff's rights; and did so with a conscious mind.

84. Carvajal acted with a sufficiently culpable state of mind, as he was directly responsible for, and/or well informed of every single policy that was being implemented in an effort to stop the introduction and mitigate the spread of Covid-19 within the BOP and it's facilities. He failed to take corrective action to correct ineffective policies and procedures which subjected Plaintiff to unnecessary harm, and/or violated his constitutional rights.

85. Here Plaintiff is alleging that defendant Lieutenant Marrs subjected him to cruel and unusual punishment in his treatment of Plaintiff during and in relation to the Covid-19 pandemic.

86. December 13, 2020, I began to feel extremely sick. I pressed the medical emergency button several times because I was in need of medical attention and in fear for my life. Lieutenant Marrs came to my cell to ask what was the problem. He falsely accused me of "being high on K-2"; he then snatched me out of my cell aggressively, handcuffed me, and then went in and began to tear through my belongings leaving things all over the floor and cell. After he was done tearing through my cell, he took the cuufs off, placed me back in my cell, and threatened to send me to the SHU if I pressed the button again. I informed him that I pressed the button because I was feeling sick and needed medical attention. Marrs said: "You heard what I said... If you push that button again, your ass is going to the SHU." As he walked away, I again told him that I was in need of medical attention and felt sick after my cellmate had already tested positive for Covid-19 and been sent to quarantine unit.  Again, Marrs yelled at me and said: "You psh that button again, your ass is going to the SHU and you'll need a different kind of medical attention."

87. Handcuffing Plaintiff, searching/tearing through Plaintiff's belongings, and threatening to send Plaintiff to SHU for requesting medical attention

(13)

87. (Continued)... subjected Plaintiff to cruel and unusual punishment in violation of his Eighth Amendment Constitutional rights.

88. Marrs acted with a sufficiently culpable state of mind, as he was aware of and in control of the situation as he was essentially punishing Plaintiff for requesting medical attention, thereby, subjecting him to cruel and unusual punishment.


F.T.C.A.:
Count 3-Negligence

89. Here Plaintiff is alleging that the United States of America was/is negligent in their duty to promulgate and/or regulate procedures whereby the Federal Bureau of Prisons is being held accountable in their duties and obligations to operate in accordnace with the policies and laws of the United States Constitution.

Plaintiff asserts that the Federal Bureau of Prisons failed in their duty to protect Plaintiff from harm, ensure that Plaintiff was not subjected to unnecessary and wanton pain and suffering while incarcerated, and ensure that Plaintiff's constitutional rights were not being violated.

90. From April 1st to October 13, 2020, Plaintiff was subjected to lockdowns and restrictions which required him to be locked in his cell for up to 24 hours per day, 7 days per week, for a period of 6 months. During this time, Plaintiff was denied/deprived of his right to exercise in order to maintain his physical and mental health. Exercise is a right afforded to Plaintiff under the Eighth Amendment of the United States Constitution, as it is considered a "basic life necessity".

91. From April 1st to mid-July, Plaintiff was confined to the C-4 housing unit at FCI Forrest City-Medium, where he did not receive sunlight, fresh-air, or exercise at all throughout this 12-14 week time period. Plaintiff was required to be locked in his cell for up to 24 hours per day, 7 days per week, and was only allowed 30 minutes to 1 hour per day for showers and communication.

92. Beginning April 1st, the Federal Bureau of Prisons began to implement emergency policies, practices, and procedures that would be implemented at all BOP facilities, in an effort to stop the introduction and mitigate the spread of Covid-19 within the prisons.    These policies, practices, and procedures effectively subjected Plaintiff to harsher conditions of confinement which ultimately subjected Plaintiff to cruel & unusual punishment in violation of his Eighth Amendment Constitutional rights.

93. One of the practices that was emphatically expressed as one of the primary sources of defenses aginst the contraction and spreading of Covid-19 was the wearing of face masks. CDC specifically & repeatedly stated that the mask should be worn at all times and that the mask should be "medical grade" in order to guarantee effectiveness.

94. Inmates were provided with very low-grade cloth masks, which were required to be worn at all times when outside of their cells and/or housing unit.

(14)

94. (Continued)... Even though inmates were being required to wear masks, there were no rules in place where STAFF members were REQUIRED or MANDATED to wear a face mask. (IF there were rules in place wihich specifically stated that staff were required to wear masks, the rule was not being enforced at all).

It was common knowledge that staff members were more likely to contract Covid-19 from interactions in the outside world and bring the virus into the institutional environment, where it would then be introduced to the inmates and spread throughout the facilities, threatening the health, safety, and overall well-being of Plaintiff and other inmates.

Staff members were constantly in close contact with inmates; as they came in contact when they were passing out meals, unlocking & locking doors, passing out mail, and various other activities which required staff to interact and/or be in close contact with inmates.  Often times, these activities and interactions were being performed or carried out without the staff member(s) wearing a face mask.

95. President Biden issued a MANDATE STATING THAT "ALL FEDERAL EMPLOYEES WERE REQUIRED TO WEAR A MASK WHEN INSIDE FEDERAL BUILDINGS." The Federl Bureau of Prisons and it's prisons was not exempt from that mandate. However, staff members (including administrative members) blatantly ignored the federal mandate and entered, moved about, and exited Forrest City Medium without wearing masks as the mandate required.

The BOP Director, the Warden, and all staff members were directly informed of the contagiousness of the coronavirus and the ease at which it spread from one individual to the next.  Despite knowing this and bearing direct witness to the contagiousness of the disease as the number of positive cases began to climb within the BOP and their prisons, staff still ignored the mask mandate.

96. Forrest City Administration failed to take corrective action towards the ignoring of the mask mandate... BOP failed to take action against the ignoring of the mask mandate... The United States failed to take action against the ignoring of the mask mandate; therefore, all contributed to the spread of Covid-19 throughout FCI Forrest City Medium, where Plaintiff ultimately contracted Covid-19, from which he continues to suffer long-term effects to his health.

97. The United States of America, by and through the actions of the Federal Bureau of Prisons and it's employees, knew of and disregarded the substantial risk of harm that Plaintiff was being subjected to, the conditions of confinement which he was being incarcerated under with the threat of a deadly virus spreading throughout the prison system, and the policies, practices, and procedures that were being implemented which were being carried out, some of which in violation of Plaintiff's Eighth Amendment Constitutional rights. The United States was aware of all of the aforementioned factors and failed to take the necessary corrective action to implement a feasible, more effective mitigation plan, that would not subject Plaintiff to undue harm, unnecessaryand wanton pain and suffering, and ongoing violations of his constitutional rights.

(15)

98. In addition to the denial and deprivation of "basic life necessities"... the United States also failed to prevent harm by allowing Plaintiff to be incarcerated under conditions of confinement which resulted in him contracting a potentially deadly virus which continues to affect his health and well-being.

99. Employees of FCI Forrest City- Medium and the Federal Bureau of Prisons acted with a sufficiently culpable state of mind, as they were very informed of the imminent risk of danger that Plaintiff was being subjected to and the health complications that he could and ultimately did suffer from as a result of the negligence of the actions of the employees of the United States of America.

100. The conditions of confinement which existed here at FCI Forrest City-Medium; where Plaintiff was denied and deprived of "basic life necessities", subjected to cruel & unusual punishment, and denied his right to safety and protection from the substantial risk of serious harm by subjecting him to and incarcerating him under conditions where he contracted a potentially deadly virus; all of these factors were the direct causation of Plaintiff's Eighth Amendment Constitutional rights being violated, subjecting him to cruel and unusual punishment in violation of the rights that are afforded to him under the law and treaties of the United States of America.

101. The staff of the Federal Correctional Institution Forrest City-Medium are employees of the Federal Bureau of Prisons, and were acting in their official duties. By and through the acts and omissions of it's employees, the United States of America has acted with negligence, and subjected Plaintiff to cruel and unusual punishment and deliberate indifference, in violati- of the Eighth Amendment; Therefore, the United States of America is properly named as the defendant in this claim.

Damages:

102. Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial.

103. Plaintiff reserves the right to amend this complaint and further plead.

Wherefore, Plaintiff seeks an award of compensatory and punitive damages, and for all other relief to which he is entitled by law.

Submitted this \_\_\_\_ day of _____, 2022.

Eric Lydell Caffey

ERIC CAFFEY

(16)

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: FEDERAL BUREAU OF PRISONS: REG. DIRCTR GRAND PRAIRIE OFFICE COMPLEX 344 MARINE FORCES DRIVE GRAND PRAIRIE, TEXAS 75051 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) ERIC LYDELL CAFFEY REG#21508-009 FCC FORREST CITY-MED 1400 DALE BUMPERS RD. FORREST CITY, ARKANSAS 72336 |
|---|---|

| 3. TYPE OF EMPLOYMENT □ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS SINGLE | 6. DATE AND DAY OF ACCIDENT APRIL 1,2020-PRESENT | 7. TIME (A.M. OR P.M.) UNKNOWN |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.) I AM BEING SUBJECTED TO VARIOUS VIOLATIONS OF MY EIGHT AMENDMENT CONSTITUTIONAL RIGHTS UNDER THE CRUEL & UNUSUAL PUNISHMENTS CLAUSE; INCLUDING BUT NOT LIMITED TO NEGLIGENCE, DELIBERATE INDIFFERENCE, AND CRUEL & UNUSUAL PUNISHMENT IN RELATION TO THE FCI FORREST CITY AND THE FEDERAL BUREAU OF PRISONS' FAILURE TO PREVENT HARM/FAILURE TO PROTECT IN ACCORDANCE WITH THE EIGHTH AMENDMENT.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

NONE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

NONE/NOT APPLICABLE

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.
PHYSICAL & MENTAL PAIN AND SUFFERING, MENTAL ANGUISH, EMOTIONAL DISTRESS, ONGOING HEALTH COMPLICATIONS AS A RESULT OF CONTRACTING COVID-19, HEADACHES, DIZZINESS, FATIGUE, CHEST PAINS, HAIR-LOSS, WEIGHT-LOSS, ANXIETY, DEPRESSION, ETC.

| 11. | | WITNESSES | |
|---|---|---|---|
| NAME | | ADDRESS (Number, Street, City, State, and Zip Code) | |
| NONE | | NONE/NOT APPLICABLE | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| NONE | $10,000,000.00 | NONE | $10,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) ERIC L. CAFFEY | 13b. Phone number of person signing form NOT APPLICABLE | 14. DATE OF SIGNATURE 12/10/2021 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

95-109                     NSN 7540-00-634-4046                     STANDARD FORM 95
                                                                    PRESCRIBED BY DEPT. OF JUSTICE
                                                                    28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☒ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes  ☒ No

17. If deductible, state amount.

NOT APPLICABLE

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

**(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95    BACK

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**                        **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Caffey Eric L**            **21508-009**    **C4**    **Fcc Forest City**
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

Part A- INMATE REQUEST Please beadvise that I fear I may be retaliated or transferd for complaints

This compliant is against FCI Forrest City-Medium security, and medical staff for their mishandling of testing for covid-19 and for the neglect that has been displayed by BOP FCI Forrest City, medical and security staff. 12-11-20 my cellmate Marvin Layton #30858-009 tested positive for Covid-19 along with several other inmates housed in C4 and was placed in A4. The CDC guidelines directs that anyone that tes positive for covid-19 and/or has been exposed to covid-19 should and need to be quartined for 14 days and closely monitered afterwards. Fcc Forrest City medical and security staff both has displayed neglect as I have been watching since the pandemic begin. I should have been re-tested and quarti with my cellmate. I wasnt retested nor was I placed in A4 under quartine after they know I was exposed, until I [illegible]

DATE 1-27-21  A unit being under quartine just show that ther unit has had positive case



SIGNATURE OF REQUESTER

Part B- RESPONSE

DATE _____                        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this respon*

ORIGINAL: RETURN TO INMATE                        CASE NUMBER: _____

Part C- RECEIPT                                   CASE NUMBER: _____

## DOCUMENTATION ⬤F INFORMAL RESO⬤⬤ON ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, Administrative Remedy Program, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

1-19-21

Inmate's Name: _Eric Coffey_                  Date: _21508-009_

Register Number: _21508-009_    Unit: _C4 ⬤⬤ 215 u_

Specific Complaint and Requested Relief: This Complaint is against FCI forrest city medium security staff, and medical staff for their mishandling of testing for Covid-19 and their willfullness neglect that has been displayed. 12-11-20 my cellmate Marvin layton #50858-009 tested positive for Covid-19 Instead of retesting me and quarentining me because of exposure due to my cell mates positive results. The week prior (12-3-20) I put in a sick call for my Blood pressure medicine and never recieved it, Medical staff Nurse shahan said they were out.

Efforts Made By Inmate to Informally Resolve Grievance (be specific): I spoke with medical staff ms. moore heart, and Mrs. shahan and put in a sick call for a refill of my Blood pressure meds 12/3/20. After my cellmate tested positive I asked medical staff to test me again and they never came until 12-19-20. Thats 8 days after my cell mr tested positive. So thats 5 days I had to go without my meds, battling Covid-19 experiencing all the symptoms. By doing this FCI Forrest/City-medium staff

Counselor's Comments: _Your unit was placed under quarentine and tested via CDC guidelines. Once you reported symptoms you were tested with the rapid ID and isolated accordingly_

both medical and security violated my 8th Amendmt and Due process.

S. Clayborn    1-25-21            NK Burke  01-25-21
Correctional Counselor's Review Date    Unit Manger's Review Date

DATE BP-9 was ISSUED _1-26-21_

Eric Lydell Caffey # 21508-009    Document
C4-215 U    Exhibit #1
Fcc Forrest City - medium.

This compliant is against FeI forrest city - medium security staff, and medical staff for their mishandling of testing for covid-19 and for the neglect that has been displayed by the Bop Fcc.Forrest city - medium, medical and security staff.  12-11-20 my cell mate tested positive for covid-19 along with several other inmates housed in C4.and was placed under quartined and moved to A4.

The CDC guidelines directs that anyone that anyone that test positive for Covid-19 and /or has been Exposed to covid-19 should and need to be quartined for 14 days, and closely monitored afterwards. F cc Forrest city medical staff and security staff both has displayed neglect as I have been watching since the pandemic begin. I should have been re-tested and quartined with my cellmate, I wasn't re-tested now nor was I placed in A4 underquartined after they knew I was exposed until 12/20/20.

Please be advise that due to my complaints, for help, I fear I may be retaliated against, and/or possibly transfered. I just want to know im safe and healthy, as well as everyone else, I don't want to cause problems. But my life, and the lives of everyone else is important. And shouldn't be at risk because of neglect and cruel & unusal punishmen
9ric Caffy # 21508-0



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution*
*Forrest City, AR 72336*

February 22, 2021

Inmate Administrative Remedy
Caffey, Eric
Reg. No: 21508-009

This Administrative Remedy case number, 1067440-F1, was delivered
to Inmate Caffey #21508-009 on February 22, 2021, at 3:15 P. M. by
Counselor S. Clayborn.

*(signature)*

Counselor S. Clayborn

**U.S. Department of Justice**

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Caffey Eric L    215-009    C4    FCC Forrest City-Medium
     LAST NAME. FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL** This is against Fcc forrest city- medical & security staff for their mishandling of me during a medical emergency and also for their mishandling testing of Covid-19 for my self and other Inmates housed at Fcc Forrest city. Since the Pandemic this prison has re-opened A-Unit and made it the Quratine unit for Covid-19. The CDC states that anyone exposed to the virus should/and need to be Quartined for 14 Days. I wasn't moved from C4 to A3 I was moved to A4 which is a unit that's been closed due to Black mold, and it still has Black mold. Covid-19 attacks the resispatory and so do the Black mold. There is nothing that the BOP can do to keep me safe and virus free. I have the most worst medical conditions and highest risk of dying from the virus. Staff are the ones bringing the virus in to inmates but yet the are not enforced to wear mask even after the President of the U.S. made it mandatory for all people to wear a mask while on Federal grounds. Fcc Forrest City Lt. Marrs accused me of being high on k2 and handcuffed me because I hit the emergeney button fearing for my life due to complication from Covid 19. Lt. Marrs treaked me with cruel and unused punishment because I feared for my life. I'm asking that because all of this I please be reconsidered for    Eric Caffey

3-11-21    Covid 19 Home Confinment    SIGNATURE OF REQUESTER
DATE

**Part B—RESPONSE**

_____     _____
       DATE                       REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

**ORIGINAL: RETURN TO INMATE**             CASE NUMBER: _____

**Part C—RECEIPT**

                                         CASE NUMBER: _____

Return to: _____ _____ _____ _____
          LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____ _____ _____
USP LVN    DATE     Previous editions not usable     SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
APRIL 1982

Exbbit #1

~~and the Bop~~

This is against Fcc ~~Forrest City~~ Medum medical & security staff for their mishandling of me d during a medical emergency and also for their mishandling testing of COVID-19 for myself ~~and/or~~ and other inmates housed at Fcc Forrest City -Medium. Since the Pandemic Fcc Forrest City has a designated Unit (A-unit) for Covid-19 Quratine. The CDC states that anyone exposed to the virus should/and need to quartine for 14 days. I wasnt moved into A3 feom C4 December 20th ~~2020~~. I was moved to A4, a unit which still has black mold, which is the reason why they units were closed down. It's a well known fact that Covid-19 attacks your resispatory. There is nothing that the Bop can help me with if I was to become seriously ill from the virus. There's nothing that the Bop can do to keep me from getting the Virus. ~~Staff~~ [BOP] are the one's bringing the virus in to us. Yet we are enforced to wear mask at all times and steff are not. CDC states that being vaccinated ~~does~~ does not stop you from getting and spreading the virus. Presdient Bidun made it mandatory for anyone on federal grounds to wear masks. ~~Bop~~ Fcc forrest City steff LT Marrs is shift Lt so he operates the security team. Instead of him trying to help me, he accused me of being high on K2, and put hands cuffs on me. The emergency button was pressed because I had a emergency. And Fcc Forrest City Security Steff Lt. Marrs treated me cruel and unusually only ~~because~~ I feared for my life.

Im asking that I please be reconsidered for Covid-19 Home Confinement. I don't want to die in this place. Being Reconsidered for home canedfinement would be a Great Release for me.

Exbhit #2

Please be advised that everything is documented all the times I tried to seek medical attention and pressed the Emergency Alert button.

Everytime I was told I had Anixety. At one time Medical staff Ms. Sha'hand check my blood pressure and it came out to be 181/126 while I was covid-19 postive and she told me that thier wasn't no medicine that they could give me, in stock My brother DAN Caffey #21507-009 has the same medication that I have for high blood pressure and I asked if they could get a pill from him and they said no. I told them I had the virus, after my cellmate tested positive (Marvin layton #30858-009) I should should have been Retested, and moved to A-Unit. But instead they told me I had anixety and moved my Brother DAN Caffey #21507-009 in the cell with me in hopes to calm down me down and keep me from pressing the emergency button seeking help. They moved my Brother in the cell with me and he ended up contracting the virus. On 3-4-21 I took the moderna Vaccine, and within 30 mins I had a severe allergic reaction. Medical staff failed to inform me that I would have to wait 90 days after testing positive before getting the shot. The CDC recommends that I don't take the second shot due to the severe Allergic reaction from the first Shot. My family called Moderna and informed them of the allergic reaction. And they stated that its nothing they can do because they wasn't the one's who gave me the shot.

Exbhit #3

All these are clear examples of cruel and unusal punishment and its a clear violation of my 8th Amendment Constitutional Rights. This clear evidence that I was mishandled by the FCC Forrest City-medium security staff & medical staff. Their isn't no excuse or reason as to why I was handcuffed and had to go through a cell search by Lt marrs just because I was seeking medical attention. Instead of receving help, I recieved a form of punishment. There is no way FCC Forrest City-medium medical staff should have been telling me that she couldn't give me any medication because none was on stock. I have two serias medical conditions with Covid-19 still bouncing around in me and they refused to give me my Diabetic & High blood pressure medications.

The only relief that im asking for is that I be released/reconsidered for home confinement for the physical, and mintal anguish Im having to go through and for the Cruel & unusual punishment that I recieved from FCC Forrest City security staff Lt. marrs.

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Caffey Eric L**   **2 1508-009  CY**   **Fcc Forest City**
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST** Please beadvise that I fear I may be retaliated or transfered for complaints

This compliant is against FCI Forrest City - medium security, and medical staff for their mishandling of testing for Covid-19 and for the neglect that has been displayed by BOP FCI Forrest City, medical and security staff. 12-11-20 my cell mate Marvin Layton #30858-009 tested positive for Covid-19 along with several other inmates housed in CY and was placed in AY. The CDC guidelines directs that anyone that test positive for Covid-19 and/or has been exposed to Covid-19 shoulld and need to be quartined for 14 days and closely monitered afterwards. Fcc Forrestcity medical and security staff both has displayed neglect as I have been watching since the pandemic begin. I should have been re-tested and quartined with my cellmate. I wasnt retested nor was I placed in AY under quartine after they know I was exposed, until plate Eric Caffey A unit being under quartine just show that their unit has had positive cases.

DATE **1-27-21**    SIGNATURE OF REQUESTER

**Part B- RESPONSE**

FEB 0 3 2021

---

DATE    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 1086 7440 -F1

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)    BP-229(13)
USP LVN

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, Administrative Remedy Program, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

1-19-21

Inmate's Name: Syris Coffey                     Date: 21508-009

Register Number: 21508-009        Unit: C4 85 215 U

Specific Complaint and Requested Relief: This complaint is against FCI forest city-medium security staff, and medical staff for their mishandling of testing for Covid-19 and their willfullness neglect that has been displayed. 12-11-20 my cellmate Marvin layton #30858-009 tested positive for Covid-19 Instead of retesting me and quarantining me because of exposure due to my cell mate positive results. The week prior (12-3-20) I put in a sick call for my Blood pressure medicine and never recieved it. Medical staff Nurse Shahan said they were out.

Efforts Made By Inmate to Informally Resolve Grievance (be specific): I spoke with medical staff ms. more heart, and Mrs. shahan and put in a sick call for a refill of my Blood pressure meds 12/3/20. After my cellmate tested positive I asked medical staff to test me again and they never came until 12-19-20. That's 8 days after my cell my tested positive. So thats 50 days I had to go without my meds, battling Covid-19 experiencing all the symptoms. By doing this FCI Forrest/city-medium staff

Counselor's Comments: your unit was placed under quarantine and tested via CDC guidelines. Once you reported symptoms you were tested with the rapid ID and isolated accordingly

both medical and security violated my 8th Amendmt and Due process.

S. Clayborn        1-25-21          N K Burke    01-25-21
Correctional Counselor's Review Date     Unit Manger's Review Date

DATE BP-9 was ISSUED  1-26-21

**U.S. Department of Justice**

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: _____ Caffey, Eric L _____    _____ 21508-009 _____    _____ C-4 _____    _____ FCC Forrest City _____
　　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　　REG. NO.　　　　UNIT　　　　INSTITUTION

**Part A - REASON FOR APPEAL** You failed to mention or address that i was without my diabetic and high blood pressure medication. Also when i went out to have my blood pressure checked they were out of stock and i went five days without any medication at all. This is inadequate medical attention due to Ms. Shahan's and the medical department not having medicine in stock that I could obtain. Including all the other issues that you are not addressing with any seriousness. my girfriend put in a complaint online and it has never been addressed to this date. her name is Tiffany Mems. All I am asking is to be reconsidered for home confinement. The medical care that is being done or lack thereof at Forrest City Medium definately needs to be addressed. I want to be put on home confinement so I can get my own medical care with my personal doctor which I will pay for myself. I hit the emergency button in the cell over 25 times and medical staff only showed up two times and was told by them that i was high on a drug K-2. I was certainly not high on any drug then or at any time while being incarcerated in the BOP I was told i had anxiety and it was not COVID-19 just goes to show how bad the medical care at FCI Forrest City is.

_____ 6-4-21 _____
　　　　DATE

_____ ERIC CAFFEY _____
　　　　SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
　　　　DATE

_____
　　　　GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE　　　　CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　　REG. NO.　　　　UNIT　　　　INSTITUTION

SUBJECT: _____

_____
　　　　DATE

_____
　　　　SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
JUNE 2002

UPN LVN



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution*
*Forrest City, AR 72336*

October 14, 2021

Inmate Administrative Remedy
Caffey, Eric
Reg. No: 21508-009

This Administrative Remedy case number, 1067440-A1, was delivered
to Inmate Caffey #21508-009 on October 14, 2021, at 3:15 P. M. by
Counselor S. Clayborn.

Counselor S. Clayborn

ERIC LYDELL CAFFEY, 21508-009
FORREST CITY MED FCI     UNT: UNIT C-4    QTR: C04-216U
PO BOX 7000
FORREST CITY,  AR 72336

**Administrative Remedy No. 1067440-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you allege you have received inadequate medical attention and your parent institution has inadequate medical supplies and dispensing of medication due to COVID-19. For relief you request home confinement.

The new issues you raise regarding inadequate medical supplies and dispensing of medication was not raised in the previous levels of this administrative remedy; therefore, it will not be addressed in this response. You must first present this concern at the institution level and then may appeal the response thereto if you are not satisfied with the response.

We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. As previously indicated, your medical record reflects you have received medical care and treatment in accordance with evidence based standard of care and within the scope of services of the Federal Bureau of Prisons. The Bureau of Prisons is monitoring the COVID-19 virus using directives and guidance from multiple agencies. Based on this information, we find no further review is warranted regarding this matter.

For consideration of Home Confinement or a Reduction in Sentence, you may submit a request to the Warden pursuant to Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).

Considering the foregoing, this response is provided for informational purposes only.

_____10 | 6 | 21_____
Date

_____ꟼ(_____
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Caffey Eric L        215-009        CY        FCC Forrest City-Medium
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

Part A—REASON FOR APPEAL This is against Fcc Forrest city-medical & security staff for their mishandling of me during a medical emergency and also for their mishandling testing of Covid-19 for my self and other inmates housed at Fcc Forrest city. Since the Pandemic this prison has re-opened A-unit and made it the quratine unit for Covid-19. The CDC states that anyone exposed to the virus should/and need to be Quartined for 14 Days. I wasn't moved from C4 to A3 I was moved to A4 which is a unit that's been closed due to Black mold, and it still has Black mold. Covid-19 attacks the resispatory and so do the Black mold. There is nothing that the BoP can do to keep me safe and virus free. I have the most worst medical conditions and highest risk of dying from the virus. Staff are the ones bringing the virus into inmates but yet they are not enforced to wear mask even after the President of the U.S. made it mandatory for all people to wear a mask while on federal grounds. FCC Forrest City Lt. Marrs accused me of being high on k2 and, handcuffed me because I hit the emergency button fearing for my life due to complication from Covid-19. Lt. Marrs treated me with cruel and unused punishment because I feared for my life. I'm asking that 3-11-21 because all of this I please be reconsidered for        Eric Caffey
DATE        Covid 19 Home confinement    SIGNATURE OF REQUESTER

Part B—RESPONSE

**RECEIVED**

MAR 22 2021

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

_____        _____
DATE        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE        CASE NUMBER: 1067440-R1

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____        BP-230(13)
USP LVN        DATE        Previous editions not usable        SIGNATURE, RECIPIENT OF REGIONAL APPEAL        APRIL 1982

Regional Administrative Remedy Appeal No. 1067440-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal receipted on March 22, 2021. You allege staff at your facility mishandled you during a medical emergency and in testing inmates at the facility during the COVID-19 pandemic. You claim you have been exposed to mold and mistreated by a specific Lieutenant endangering your life. As relief, you request reconsideration for home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

The Bureau of Prisons (BOP) is committed to minimizing and mitigating COVID-19 transmission risk for inmates and staff, and to providing proper care, treatment and isolation as appropriate, for those who contract the virus. The BOP is monitoring the COVID-19 virus using directives and guidance from multiple agencies, including but not limited to the World Health Organization, the Centers for Disease Control, the Office of Personnel Management, and the Department of Justice. The situation is continually assessed and responses are updated to best ensure the safety of inmates, staff, and the public.

Additionally, a review of your medical record reveals you have been and will continue to be appropriately monitored, evaluated, and treated. If you wish to address clinical factors you feel have not been adequately documented in your medical record, you are encouraged to use the sick call process. Due to the current pandemic, the process for signing up for sick call may vary from normal procedures.

If you wish to be evaluated for additional Residential Re-Entry Center placement and/or home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, you should contact your Unit Team. For RIS consideration, you may submit a request to the Warden as detailed in Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Federal Bureau of Prisons, Office of General Counsel, 320 First Street, N.W., Washington, D.C. 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

MAY 19 2021
_____
Date

KuM   J. Baltazar
      Regional Director

**FEDERAL CORRECTIONAL COMPLEX, FORREST CITY, AR**
**PART B- RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**1067440-F1**

This is in response to your Request for Administrative Remedy, received on February 3, 2021. In your request, you state that Health Services Medium mishandled testing of Covid-19 for the inmates housed at FCC Forrest City Medium.

You did not make any specific requests for relief.

On December 7, 2020, C4 Housing Unit was tested and placed into Quarantine following an exposure to the Covid-19 virus. Once results were received, inmates that tested positive were removed from C4 Housing Unit and placed into Isolation. The inmates that tested negative remained in C4 Housing Unit to begin a 14-day Quarantine Period.

On December 20, 2020, you tested positive for Covid-19 with the Abbott ID Now Covid-19 testing machine. You were moved from C4 into A3, the designated Isolation Unit. You reported symptoms of fatigue and diarrhea. C4 Housing Unit remained on Quarantine.

On December 28, 2020, the registered nurse evaluated you after you reported symptoms of shortness of breath. The assessment revealed Adequate Respiratory Perfusion. No other significant findings were indicated.

On January 12, 2021, you were released back to C4 Housing Unit following no further complaints of symptoms.

This response to your request for Administrative Remedy is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_____        _____
John P. Yates                                            Date
Complex Warden

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball–point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From: __Caffey Eric L__     __215-009__   __CУ__   __FCC Forrest City-Medium__
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL** This is against FCC forrest city. medical & security staff for their mishandling of me during a medical emergency and also for their mishandling testing of Covid-19 for myself and other inmates housed at FCC Forrest city. Since the Pandemic this prison has re-opened A-Unit and made it the quarotine unit for Covid-19. The CDC states that anyone exposed to the virus should and need to be Quartined for 14 Days. I wasn't moved from CY to A3 I was moved to AY which is a unit that's been closed due to Black mold, and it still has Black mold. Covid-19 attacks the resispatery and so do the Black mold. There is nothing that the BOP can do to keep me safe and virus free. I have the must worst medical conditions and highest risk of dying from the virus. Staff are the ones bringing the virus into inmates but yet the are not enforced to wear mask even after the President of the U.S. made it mandatory for all people to wear a mask while on federal grounds. FCC Forrest City Lt. Morris accused me of being high on k2 and handcuffed me because I hit the emergency butten fearing for my life due to complication from Covid-19. Lt. Morris treated me with cruel and unusel punishment because I feared for my life. I'm asking that because all of this I please be reconsidered for Covid-19 Home Gonehnum

__3-11-21__
DATE

SIGNATURE OF REQUESTER   _Eric Caffey_

**Part B—RESPONSE**

_____
DATE

_____
REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE

CASE NUMBER: _1067440-R1_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____     _____
USP LVN     DATE     Previous editions not usable     SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP–230(13)
APRIL 1982

Regional Administrative Remedy Appeal No. 1067440-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal receipted on March 22, 2021. You allege staff at your facility mishandled you during a medical emergency and in testing inmates at the facility during the COVID-19 pandemic. You claim you have been exposed to mold and mistreated by a specific Lieutenant endangering your life. As relief, you request reconsideration for home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

The Bureau of Prisons (BOP) is committed to minimizing and mitigating COVID-19 transmission risk for inmates and staff, and to providing proper care, treatment and isolation as appropriate, for those who contract the virus. The BOP is monitoring the COVID-19 virus using directives and guidance from multiple agencies, including but not limited to the World Health Organization, the Centers for Disease Control, the Office of Personnel Management, and the Department of Justice. The situation is continually assessed and responses are updated to best ensure the safety of inmates, staff, and the public.

Additionally, a review of your medical record reveals you have been and will continue to be appropriately monitored, evaluated, and treated. If you wish to address clinical factors you feel have not been adequately documented in your medical record, you are encouraged to use the sick call process. Due to the current pandemic, the process for signing up for sick call may vary from normal procedures.

If you wish to be evaluated for additional Residential Re-Entry Center placement and/or home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, you should contact your Unit Team. For RIS consideration, you may submit a request to the Warden as detailed in Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Federal Bureau of Prisons, Office of General Counsel, 320 First Street, N.W., Washington, D.C. 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

MAY 1 9 2021
_____
Date

_____
J. Baltazar
Regional Director

RECEIPT - ADMINISTRATIVE REMEDY

DATE: MARCH 30, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : ERIC LYDELL CAFFEY, 21508-009
      FORREST CITY MED FCI     UNT: UNIT C-4     QTR: C04-215U

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID       : 1067440-R1
DATE RECEIVED   : MARCH 22, 2021
RESPONSE DUE    : MAY 21, 2021
SUBJECT 1       : OTHER MEDICAL MATTERS
SUBJECT 2       :

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: MARCH 30, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : ERIC LYDELL CAFFEY, 21508-009
      FORREST CITY MED FCI    UNT: UNIT C-4    QTR: C04-215U

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE REGIONAL APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID        : 1067440-R1
DATE RECEIVED    : MARCH 22, 2021
RESPONSE DUE     : MAY 21, 2021
SUBJECT 1        : OTHER MEDICAL MATTERS
SUBJECT 2        :

RECEIPT - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 1, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ERIC LYDELL CAFFEY, 21508-009
      FORREST CITY MED FCI     UNT: UNIT C-4     QTR: C04-216U

THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID       : 1067440-A2
DATE RECEIVED   : AUGUST 12, 2021
RESPONSE DUE    : OCTOBER 11, 2021
SUBJECT 1       : OTHER MEDICAL MATTERS
SUBJECT 2       :

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 1, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ERIC LYDELL CAFFEY, 21508-009
      FORREST CITY MED FCI    UNT: UNIT C-4    QTR: C04-216U

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 1067440-A2
DATE RECEIVED  : AUGUST 12, 2021
RESPONSE DUE   : OCTOBER 11, 2021
SUBJECT 1      : OTHER MEDICAL MATTERS
SUBJECT 2      :



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution*
*Forrest City, AR 72336*

February 22, 2021

Inmate Administrative Remedy
Caffey, Eric
Reg. No: 21508-009

This Administrative Remedy case number, 1067440-F1, was delivered
to Inmate Caffey #21508-009 on February 22, 2021, at 3:15 P. M. by
Counselor S. Clayborn.

*SClar*

Counselor S. Clayborn

Regional Administrative Remedy Appeal No. 1067440-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal receipted on March 22, 2021.  You allege staff at your facility mishandled you during a medical emergency and in testing inmates at the facility during the COVID-19 pandemic.  You claim you have been exposed to mold and mistreated by a specific Lieutenant endangering your life.  As relief, you request reconsideration for home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

The Bureau of Prisons (BOP) is committed to minimizing and mitigating COVID-19 transmission risk for inmates and staff, and to providing proper care, treatment and isolation as appropriate, for those who contract the virus.  The BOP is monitoring the COVID-19 virus using directives and guidance from multiple agencies, including but not limited to the World Health Organization, the Centers for Disease Control, the Office of Personnel Management, and the Department of Justice.  The situation is continually assessed and responses are updated to best ensure the safety of inmates, staff, and the public.

Additionally, a review of your medical record reveals you have been and will continue to be appropriately monitored, evaluated, and treated.  If you wish to address clinical factors you feel have not been adequately documented in your medical record, you are encouraged to use the sick call process.  Due to the current pandemic, the process for signing up for sick call may vary from normal procedures.

If you wish to be evaluated for additional Residential Re-Entry Center placement and/or home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, you should contact your Unit Team.  For RIS consideration, you may submit a request to the Warden as detailed in Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Federal Bureau of Prisons, Office of General Counsel, 320 First Street, N.W., Washington, D.C. 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

**MAY 19 2021**
_____
Date

_KUM_ J. Baltazar
Regional Director

**Central Office Administrative Remedy Appeal**

epartment of Justice

....Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attach-ments must be submitted with this appeal.

From: Caffey, Eric L     21508-009     C-4     FCC Forrest City
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A - REASON FOR APPEAL You failed to mention or address that i was without my diabetic and high blood pressure medication. Also when i went out to have my blood pressure checked they were out of stock and i went five days without any medication at all. This is inadequate medical attention due to Ms. Shahan's and the medical department not having medicine in stock that I could obtain. Including all the other issues that you are not addressing with any seriousness. my girfriend put in a complaint online and it has never been addressed to this date. her name is Tiffany Mems. All I am asking is to be reconsidered for home confinement. The medical care that is being done or lack thereof at Forrest City Medium definately needs to be addressed. I want to be put on home confinement so I can get my own medical care with my personal doctor which I will pay for myself. I hit the emergency button in the cell over 25 times and medical staff only showed up two times and was told by them that i was high on a drug K-2. I was certainly not high on any drug then or at any time while being incarcerated in the BOP I was told i had anxiety and it was not COVID-19 just goes to show how bad the medical care at FCI Forrest City is.

6-4-21
DATE

ERIC CAFFEY
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
AUG 12 2021
Administrative Remedy Section
Federal Bureau of Prisons

REC...
JUN 15 2021
Administrative Remedy Section
Federal Bureau of Prisons

DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: 1067440-A1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____



*Retail*

US POSTAGE PAID

**$0.00**

Origin: 72335
01/13/23
0432130735-09

)RITY MAIL®

1 Lb 11.50 Oz

**RDC 04**

Y DAY:  01/17/23

C041

)L AVE
AR 72201-3329

TRACKING® #



9436 3013 3297 94



ope
:0

**PRIORITY®**
**★ MAIL ★**


**UNITED STATES**
**POSTAL SERVICE ®**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:  ERIC CAFFEY #21508-009
FCI Forrest City  Medium
P.O BOX 3000
Forrest City AR 72336

TO:  600 W. Capital Ave.
# Area, Little Rock, Ar 72201

Label 228, July 2013                    FOR DOMESTIC AND INTERNATIONAL USE

# VISIT US AT USPS.COM
ORDER FREE SUPPLIES ONLINE

e maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.